1  Tina Wolfson (SBN 174806)
   twolfson@ahdootwolfson.com
2  Christopher E. Stiner (SBN 276033)
   cstiner@ahdootwolfson.com
3  Sarper Unal (SBN 341739)
   sunal@ahdootwolfson.com
4  **AHDOOT & WOLFSON, PC**
5  2600 West Olive Avenue, Suite 500
   Burbank, CA 91505
6  Telephone: (310) 474-9111
   Facsimile: (310) 474-8585
7

8  *Attorneys for Plaintiffs and the Proposed Classes*

9
                 **UNITED STATES DISTRICT COURT**
10
                **CENTRAL DISTRICT OF CALIFORNIA**
11
                        **WESTERN DIVISION**
12

13  SCOTT BLAIR, RYAN                    Case No.
    BOLANOWSKI, and JOHN WELCH,
14  individually and on behalf of all others  **CLASS ACTION COMPLAINT**
    similarly situated,
15
                                        **JURY TRIAL DEMANDED**
16                        Plaintiffs,

17        v.

18  SONOS INC.,

19                        Defendant.

20

21

22

23

24

25

26

27

28

---

                    CLASS ACTION COMPLAINT

Plaintiffs Scott Blair, Ryan Bolanowski, and John Welch ("Plaintiffs") bring this action on behalf of themselves, and all others similarly situated against Sonos, Inc. ("Sonos" or "Defendant"). Plaintiffs bring this class action based upon personal knowledge of the facts pertaining to themselves, and on information and belief as to all other matters, by and through the investigation of undersigned counsel.

## I.    NATURE OF THE ACTION

1.      Sonos is an audio technology company that designs, manufactures, and sells wireless audio products. Sonos offers a range of products from smart speakers, sound bars, subwoofers, amplifiers, and network audio streamers. These devices allow users to stream music and other audio content from various sources, such as online streaming services, local libraries, and internet radio.

2.      Sonos products are designed to be modular, which allow users to connect multiple speakers to play synchronized or independent audio.

3.      Sonos products are controlled through a mobile application ("Sonos App") on the Sonos device owner's mobile device, tablet, or computer. The Sonos App originally allowed users to install new devices, enable playback, change volume and other sound settings, and integrate the Sonos products with third-party services such as Spotify, Apple Music, or Amazon Alexa.

4.      On or about May 7, 2024, Sonos released a redesigned version of the Sonos App ("App Redesign") that materially changed the interface and functionality of the application, and, consequently, the devices. Sonos promoted the App Redesign as an improvement, claiming that it would offer a faster and more streamlined experience. In many cases, Sonos users were required to update to the App Redesign in order to continue using their Sonos products, either through direct prompts or as a result of automatic firmware updates pushed to the devices themselves. Users were not given the option to revert to the prior version once the update was installed.

5.      The App Redesign was released with significant bugs and performance issues. Users reported that the App Redesign frequently crashed, failed to connect with

devices, and lacked stable connection to the Sonos products. Many Sonos users experienced interruptions in audio playback and long delays between input and responses.

6.      In addition to the technical bugs, the App Redesign removed or disabled features that had been available in prior versions of the Sonos App. For example, the app's alarm scheduling function, which allowed users to schedule audio playback at specified times, was defunct. Sonos later acknowledged that it had disabled this feature due to a known data corruption issue, but did not disclose this information at the time of release. Other missing features included music library access, playlist editing, and the ability to search across multiple streaming devices simultaneously.

7.      Employee concerns, as later reported, made clear that Sonos was aware that the app was not ready when it was released.[1] Despite this, Sonos continued to market the new version as an improvement and failed to warn users of the known issues.

8.      As a result, Sonos users expected a fully functional app and devices, but instead received a degraded app that sometimes rendered their current Sonos products ineffective or useless. Many users lost the benefit of key features that had influenced their purchase decisions.

9.      Plaintiffs seek to remedy these harms individually and on behalf of all those similarly situated, whose Sonos device performance was impacted as a result of Defendant's forced implementation of the App Redesign.

10.      Accordingly, Plaintiffs, individually and on behalf of the Class, assert claims for (1) Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et seq*.; (2) California Computer Access and Fraud Act, Cal. Penal Code §§ 502, *et seq*.; (3) False and Misleading Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*.; (4) trespass to chattels; (5) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200; (6)

---

[1] See Scharon Harding, *Sonos Workers Shed Light on Why the App Update Went So Horribly*, ARSTECHNICA (Sept. 23, 2024), https://arstechnica.com/gadgets/2024/09/it-was-the-wrong-decision-employees-discuss-sonos-rushed-app-debacle/.

breach of contract; (7) breach of the duty of good faith and fair dealing; (8) negligent misrepresentation; (9) Illinois' Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. §§ 510 & 512; (10) Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. §§ 505, *et seq.* (11) New Jersey Consumer Fraud Act, N.J. Stat. Ann §§ 56:8-1, *et seq.* (12) New York General Business Law, N.Y. Gen. Bus. Law § 349; and (13) New York General Business Law, N.Y. Gen. Bus. Law § 351.

## II.  JURISDICTION AND VENUE

11.  This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, and Sonos is a citizen of a State different from that of at least one Class member.

12.  This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs allege that Sonos violated the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, et seq.

13.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

14.  Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because Sonos's principal place of business is located in this District and substantial parts of the events or omissions giving rise to the claims occurred in the District. Venue is also proper in this Court because Sonos is located here, the causes of action arose here, and the Sonos products and App Redesign at issue here were, at least in part, designed, and tested by Sonos in this District.

## III.  PARTIES

15.  Plaintiff Scott Blair is a natural person and a citizen of New York, residing in Hornell, New York.

16.  Plaintiff Ryan Bolanowski is a natural person and a citizen of Illinois, residing in Geneva, Illinois.

17. Plaintiff John Welch is a natural person and a citizen of New Jersey, residing in Barnegat, New Jersey.

18. Defendant Sonos, Inc. is a corporation that was incorporated under the laws of the State of Delaware and has its principal place of business in Santa Barbara, California.

## IV.    FACTUAL ALLEGATIONS

**A.    Sonos's Wireless Audio Business Development**

19. Sonos incorporated in Delaware in August 2002 as Rincon Audio, Inc, and changed its name to Sonos, Inc. in May 2024.

20. Sonos's founders designed a system that used the home Wi-Fi to transmit audio to speakers assigned to different zones such as the living room or dining room, allowing users to control playback in each zone separately or together.

21. In 2005, Sonos launched its first product, ZonePlayer 100. Over the years, Sonos has created a plethora of products and services surrounding audio technology. Since then, Sonos has added numerous products, including the following Sonos devices:

(i)    Play:5: first released in or about November 2009, is the most powerful speaker among Sonos's speaker products.

(ii)    Play:1: released in October 2013, the Play:1 is another smart speaker, similar to the Play:5, but with less powerful speaker components.

(iii)    Sonos One: released in October 2017, the Sonos One is a smart speaker, representing the next generation of Sonos's smart speakers, after the "Play" speakers.

(iv)    Beam: released in July 2018, the Beam is a smart soundbar. Soundbars are speakers in the shape of a bar lying horizontally, designed to be placed under a television to supplement or replace the television's own speakers.

CLASS ACTION COMPLAINT

(v) Move: released in September 2019, the Move was Sonos's first portable smart speaker. It has an internal rechargeable battery and thus can function without being plugged into an external power source.

(vi) Port: a network audio streamer that connects to traditional audio equipment. While Port does not itself have streaming capabilities, it enables users to play streaming audio sources through a Sonos system.

(vii) Amp: another product that connects to traditional equipment so that it can play audio streaming sources through a Sonos system; it also amplifies the audio source and thus can power passive speakers, which do not have their own amplifier or power source.

22.    In 2008, Sonos launched its own, free app for iOS users, enabling them to use their mobile device, to control their Sonos devices. In 2011, Sonos introduced a Sonos App for Android users. Sonos discontinued Sonos remote controls in 2012.

23.    Since Sonos launched Sonos apps for iOS and Android devices, and discontinued the Sonos remote, it has designed its products to be controlled via the Sonos App. The Sonos App is the primary hub for Sonos users to control their Sonos devices, and it is necessary to initially connect any Sonos Device to the internet, add devices to a system or network, to create zones, to change device and system settings, and to troubleshoot technical issues.

24.    The appeal for Sonos products hinged on their ability to utilize wireless audio technology that allowed the user to install speaker systems without the necessity of installing low-voltage infrastructure.

25.    In 2011, Sonos added support for outside streaming services like SiriusXM and Spotify, allowing users to connect their accounts and use the Sonos App to search, select, and control playback of audio from those services.

26.    The Sonos App allows users to search and play audio from all connected services and local sources in one interface. For example, a user with SiriusXM and Spotify can access both through the app at the same time. Sonos added support for

Amazon Music in October 2015, for Apple Music in February 2016, and for scores of other streaming services, thereafter, including iHeartRadio. The ability to perform a combined search of multiple audio sources (such as streaming services) is a key feature of the Sonos App and is very important to users.

27.    Sonos launched its initial public offering of common stock on August 6, 2018. Since that time, Sonos's annual revenue has increased from $1.1 billion in fiscal year 2018 (ending September 29, 2018) to $1.7 billion in fiscal year 2023 (ending September 30, 2023). For fiscal year 2024, Sonos reported that it had a total of nearly 50.4 million products registered in approximately 16.3 million households globally, and these households averaged 3.1 Sonos devices each. For that fiscal year, approximately 61% of Sonos's revenue was from the United States. The United States also accounted for the majority of Sonos's revenue in 2021, 2022, and 2023.

### B.    Sonos Devices

28.    As discussed above, Sonos sold a wide range of audio related products prior to and after the App Redesign, including but not limited to smart speakers, soundbars, subwoofers, amplifiers, network audio streamers, headphones, and audio accessories.

29.    The Sonos Play: 1 user guide makes clear that the Sonos App is not optional: "Use the Sonos app to control your Sonos system from any device." The guide also instructs users: "[h]ere's what you'll need . . .The Sonos app—you'll use it to set up and control your Sonos system (install it on the mobile device you're using for setup)."

30.    A major feature of the Sonos devices is its modular, multi-device capability, which allows users to create customized, multi-room audio environments by linking multiple Sonos Devices through the app. Many consumers purchase additional Sonos devices to expand their systems over time, often including different generations of the same product line, with the expectation that all components will continue to function stably and reliably through the Sonos App.

31.    As a result, the proper function of the Sonos App is critical to the continued usability and value of Sonos devices. When the App Redesign was released, and users

experienced degraded performance, missing features, and connectivity issues, the impact was compounded for users with multiple devices, effectively rendering entire home audio systems unreliable or unusable.

**C.    Sonos Tailors Its App Development Towards the Ace Headphones, Neglecting Legacy Devices**

32.    Facing a 5.5% revenue decline from 2022 to 2023, Sonos launched the Era 100 and Era 300, its next generation of smart speakers. However, as then-CEO Patrick Spence acknowledged on November 15, 2023, fiscal year 2023 was a "challenging year in the categories in which we play."[2]

33.    As *Wired* explained, Sonos was facing a challenged due to the largest phone maker's decision to remove the headphones jack from the iPhone:

> Folks used to pile around a stereo, home theater, or pair of computer speakers in their houses, but they'd all too often use a plastic pair of junk buds that came with their iPhone (or iPod, or Walkman before that) to listen on the go. With its $150 AirPods—and subsequent AirPods Pro and AirPods Max—Apple finally brought higher-ish-end portable audio to the masses.[3]

34.    Spence then made an announcement hinting that Sonos would finally launch a headphones product, stating that Sonos was

> [at] the beginning of a multi-year product cycle where we expect to reap the rewards of our R&D investments. This cycle begins with our entry into a new multi-billion dollar category in the second half of the year that will complement our current offering, delight customers and drive immediate revenue

---

[2] Latest News, *Sonos Reports Fourth Quarter and Fiscal 2023 Results*, Sᴏɴᴏs, (Nov. 15, 2023) https://investors.sonos.com/news-and-events/investor-news/latest-news/2023/Sonos-Reports-Fourth-Quarter-and-Fiscal-2023-Results/default.aspx.

[3] Parker Hall, *Sonos Wants to Get Off Your Shelf and Own Audio Everywhere*, Wɪʀᴇᴅ (June 4, 2024) https://www.wired.com/story/sonos-wants-to-get-off-your-shelf-and-own-audio-everywhere/.

CLASS ACTION COMPLAINT

\*\*\*

> This change posed a massive problem for Sonos and the streaming speaker market, which relies primarily on home internet connections, and ears in kitchens, living rooms, and bedrooms listening to music out loud, instead of on headphones.[4]

35.     Spence did not identify the "new multi-billion dollar category," but six days later, Bloomberg reported that Sonos "will make a long-awaited push into headphones with a model priced upwards of $400 that's slated to be released as early as April, according to people familiar with the matter."[5]

36.     Sonos first released its App in 2008 and periodically issued updates. In June 2020, Sonos launched a major updated called "S2" and rebranded the original app as "S1". Devices made after June 2020 are incompatible with S1.

37.     As Sonos shifted focus to portable products, it began developing a redesigned app, codenamed "Passport." The redesigned app was intended to support mobile products like headphones. The redesigned app aimed to "let users control the headphones and other mobile Sonos gear from a smartphone app when away from their home internet."[6] In contrast to earlier updates, this was a more substantial undertaking: a complete redesign of the app for both iOS and Android devices as well as web browsers.

38.     The Sonos Ace headphones marked Sonos's first fully mobile product, designed for use beyond the home or office Wi-Fi.[7] Supporting this shift required rebuilding the Sonos App and the cloud infrastructure behind it, which is a major

---

[4] Unless otherwise noted, emphases throughout this complaint are added where words are both bolded and italicized. Emphases throughout of words that are only bolded or only italicized were present in the original.

[5] Mark Gurman, *Sonos Readies $400-Plus Headphones to Rival Apple and Bose, TV Set-Top Box*, BLOOMBERG (Nov. 21, 2023), https://www.bloomberg.com/news/articles/2023-11- 21/sonos-plans-400-500-headphones-tv-set-top-box-video-roam-2-new-sound-bar.

[6] *Id*.

[7] *See* Hall, *supra*.

CLASS ACTION COMPLAINT

undertaking compared to prior updates, where the app was primarily focused on stationary products.[8]

39.     With the headphone's launch, as reported by *Wired*, Spense has "now shifted its internal focus to 'moving sound'—products designed to seamlessly transport listeners from one situation to the other."[9]

40.     Despite the large scope of that project, Sonos conducted a reorganization led by its Chief Product Office and trimmed its product development staff, first in June 2023 and again in August 2023, in line with Spence's pledge to investors to rein in expenses.

41.     With the planned headphones launch for June 2024, releasing the App Redesign was essential to Sonos's strategy. Bloomberg reported that Sonos wanted to release the App Redesign "at least a few weeks before the headphones debut."[10] However, later reporting, employees worried that Sonos's "drive to attract new customers, and Spence's promises to investors, were taking precedence over ensuring equipment already owned by longtime loyal customers would continue to function as expected."[11]

**D.     Sonos App Redesign**

42.     Sonos officially revealed the App Redesign on April 23, 2024, issuing a press release that called the App Redesign a "[m]odernized app and platform [that] puts

---

[8] *See* Dave Lee, *How Sonos Botched an App and Infuriated Its Customers*, Bloomberg (Sept. 23, 2024), https://www.bloomberg.com/opinion/articles/2024-09-23/how-sonos-botched- an-app-and-infuriated-its-customers

[9] Hall, *supra*.

[10] Mark Gurman, *Sonos' Highly Anticipated Move Into Headphones Hits Software Snag*, Bloomberg, (Feb. 27, 2024), https://www.bloomberg.com/news/articles/2024-02-27/sonos-headphones-delayed-until-june-party-speaker-and-tv-box-also-in-the-works#:~:text=That%20will%20allow%20users%20to,weeks%20before%20the%20headphones%20debut.

[11] Lee, *supra*.

CLASS ACTION COMPLAINT

listeners in the driver's seat with a personalized experience that makes listening *easier, faster and better*."[12] The press release further stated:

> **Sonos (Nasdaq: SONO)** today revealed its most extensive app redesign ever, creating an unprecedented streaming experience that allows listeners to organize their favorite playlists, stations, albums and more from over 100 services on one customizable Home screen. The new Home screen provides faster access to Sonos system controls with one easy swipe up, making tab to tab jumping a thing of the past. As a leader in sound experience that's focused on creating a better way to listen, Sonos intentionally redesigned the app on a modern software platform for an easier, faster and better experience that can support more rapid innovation. The reimagined app supports all existing S2 mobile app and via an all-new web app on May 7, 2024.

> "We introduced the world to multi-room music over 20 years ago, and are proudly playing in over 15 million homes today. As we are always pushing ourselves to innovate, and listening to feedback from our passionate customers, we felt now was the time to reimagine our app experience," said Patrick Spence, CEO of Sonos. "After thorough development and testing, we are confident this redesigned app is easier, faster and better. It once again raises the bar for the home music listening experience, and sets up our ability to expand into new categories and experiences."

> "Today's streaming experience has become fragmented across multiple platforms due to varied content offerings, algorithmic curation, or simply the desire to not recreate playlists in multiple locations," said Maxime Bouvat-Merlin, Chief Product Officer of Sonos. "As the only audio brand with an open platform offering extensive choice, Sonos makes it easy to control your system and curate your favorite sounds all in one place. Our reimagined app delivers the industry's most streamlined streaming experience by bringing a world of content and intuitive control to the Home screen."

> **100+ streaming services, one Home screen**

---

[12] *Sonos Unveils Completely Reimagined Sonos App, Bringing Services, Content and System Controls to One Customizable Home Screen*, BUSINESS WIRE (Apr. 23, 2024), https://www.businesswire.com/news/home/20240423695150/en/Sonos-Unveils-Completely-Reimagined-Sonos-App-Bringing-Services-Content-and-System-Controls-to-One-Customizable-Home-Screen.

The redesigned Sonos app prioritizes a listening experience that's human - allowing you to bring your true favorites front and center and giving you more control to make your streaming experience your own.

- **Get into your music (and off the app) faster:** No need to tap between tabs — the new Home screen serves up all your favorite content and controls, all in one place. Quickly jump back into your recently played, browse libraries and recommendations from your preferred services, and fill your home with music and all the sounds you love.

- **Customize and curate**: Enjoy unparalleled curation by designing your Home screen to reflect how you listen. Pin rows of your favorite content and services; then move, edit, or rearrange them to your liking.

- **Search every streaming library:** Look for an artist, song, podcast, or audiobook across all your preferred streaming apps at once via an easy-to-use search bar that's always available right on your Home screen.

- **Elevated system control:** Swipe up from the bottom of your Home screen to seamlessly control your entire system and access a visual overview of what's playing on each of your products, quickly group speakers, and dial in on the perfect volume from anywhere in the app.

Accessible from any modern web browser, a brand new web app allows listeners the same seamless system control as the mobile app. The web app will replace the existing Sonos desktop controller and will be available alongside the redesigned mobile app on May 7, 2024.

43.     The App Redesign replaced earlier versions of the Sonos App for iOS and Android, and discontinued the desktop app, which was replaced with a web-based version accessed through an internet browser. This, Spense claims, was done "[a]fter thorough development and testing"[13] such that Sonos is "confident this redesigned app is easier,

---

[13] *Id.*

faster and better. It once again raises the bar for the home music listening experience, and sets up our ability to expand into new categories and experiences."[14]

44.    As used herein, "App Redesign" refers to all sub-versions beginning with version 80.00 for android and iOS. Although Sonos has released multiple sub-versions, the App Redesign continues to degrade performance compared to S1 and S2.

45.    In the Apple App Store, as shown in the following graphic, Sonos described the App Redesign as an "update [that] brings a new look and feel to the app. Get to your favorite music faster. Enjoy easier control of your system. And personalize your experience."



46.    Sonos later released sub-versions of the App, for both iOS and Android, and provided the same description. For instance, Sonos repeated the description from the paragraph above for versions 80.00.02 and 80.00.04 of the iOS version of the App, as shown here:

_____

[14] *Id.*

CLASS ACTION COMPLAINT

# Version History

**80.00.04**                                        2h ago

This update brings a new look and feel to the app.
Get to your favorite music faster. Enjoy easier
control of your system. And personalize your  more

**80.00.02**                                        9h ago

This update brings a new look and feel to the app.
Get to your favorite music faster. Enjoy easier
control of your system. And personalize your  more

**80.00**                                          11h ago

This update brings a new look and feel to the app.
Get to your favorite music faster. Enjoy easier
control of your system. And personalize your  more

**16.1**                                           1mo ago

Bug fixes and improved performance.

**16.0**                                           3mo ago

Bug fixes and improved performance.

CLASS ACTION COMPLAINT

47.     Sonos provided similar descriptions for the Android version of the App Redesign, as shown here:



CLASS ACTION COMPLAINT

48.     On its website, Sonos touted that "[t]he Sonos app is redesigned and better than ever. Get the latest update now."[15] Sonos told users that the App Redesign was "Your key to the ultimate listening experience," stating that "The Sonos app brings all your content and settings together in one place for effortless control."[16]

49.     Sonos also represented that the App Redesign was "[b]etter by redesign," stating that "[t]he latest update brings a new look and feel to the Sonos app. Get to your favorite music faster. Enjoy easier control of your system. And personalize your experience."[17] Sonos told users:

> **Welcome to your new Home screen**
>
> Once you open the app, everything you need is at your fingertips. Quickly jump back into recent favorites, browse services, search for content, find recommendations, and control your system.
>
> * * *
>
> **Find everything you want faster**
>
> Search is always available at the bottom of the Home screen. Just enter the artist, genre, album, or song you want, and get a set of combined results from all your services.
>
> * * *
>
> **Curate and customize**
>
> Save playlists, artists, and stations from any service to Sonos Favorites to create the ultimate music library. Add and edit Collections to your Home screen for easy access to go-to content.

---

[15] *Your Key to the Ultimate Listening Experience*, Sonos, (May 9, 2024), https://www.sonos.com/en-us/controller-app [https://web.archive.org/web/20240509194954/https://www.sonos.com/en-us/controller-app].

[16] *Your Key to the Ultimate Listening Experience*, Sonos, (June 9, 2024) https://www.sonos.com/en-us/controller-app [https://web.archive.org/web/20240609153308/https://www.sonos.com/en-us/controller-app].

[17] *Id*.

\* \* \*

### Get a clearer view of your system

Swipe up from the the [sic] bottom of the Home screen to view and control each speaker and group. See what's playing where. Tap to pause or resume.

\* \* \*

### Complete control

Play different music in different parts of your home, or group Sonos products for a truly immersive listening experience. Adjust the volume, change what's playing, and seamlessly move sound from one room to the next.

\* \* \*

### Streaming streamlined

The Sonos app connects to all your favorite streaming services for music, podcasts, radio, and audiobooks, making it easy to navigate and play all the content you love.

\* \* \*

### Unlock all the power of Sonos

Access exclusive features like TrueplayTM tuning and Sonos Voice Control. Adjust speaker settings to your exact preference. And easily add speakers to your system.

50.    On April 23, 2024, a Sonos employee posted a tutorial on Sonos's Community section of its website. The tutorial represented that "[t]he New Sonos App follows a different approach by giving you complete control at a glance."[18] Under the heading, "What's changing," the post listed:

- The new Sonos app will become *easier to use* with [its] enhanced user interface.

---

[18] Marco B., *Tutorial: Differences between S1/S2 and the new Sonos App*, Sonos Community (Apr. 23, 2024), https://en.community.sonos.com/the-new-sonos-app-229144/differences-between-s1-s2-and-the-new-sonos-app-6891763.

CLASS ACTION COMPLAINT

- It will give you *faster access to the most used features*.

51.    Sonos urged users to download subsequent sub-versions of the App Redesign by emphasizing that they provided "bug fixes" and "improved performance". For instance, at least since the release of App Redesign sub-version 80.03.06 for iOS, on June 17, 2024, Sonos stated on the Apple App store that every subsequent sub-version of the App Redesign featured "bug fixes and improved performance."

52.    Sonos encouraged users to install the App Redesign by pushing in-app notifications that required users to install the update and linked directly to the download. Although Sonos did not disclose that the update was mandatory, users reported that the app repeatedly prompted them to install it and, in practice, forced the update upon the user. One user wrote:

> I am so angry that you are forcing your customers to update the app on app load . . . WTF man!!!! (Even when I have selected the no automatic updates on the app) I am perfectly happy with how it is running before and I don't trust your updates. I DO WANT ANY MORE OF YOUR F@@KEN UPDATES!!! Leave me be! With you latest update (which sounds exactly the same) I now have my sound cutting out after I pause my tv . . . after 3 mins of re-setting the volume it comes back. It happened after the last update you did - hence why I selected no automatic updates on the app. So now I have to go back and re-set every 14 of my speakers so it reads the app again. Just wow!![19]

53.    Sonos configured its devices to automatically install firmware updates, which rendered older versions of the Sonos App incompatible. Once a device's firmware updated, users attempting to use a prior version of the app would encounter an error message stating that an update was required:

---

[19] Customer_7, *STOP FORCING PEOPLE TO UPDATE YOUR APP!!!!!!!!!*, Sonos Community (May 22, 2025), https://en.community.sonos.com/controllers-and-music-services-229131/stop-forcing-people-to-update-your-app-6929263.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT

54.     Thus, when a user's Sonos device firmware is updated, even without their affirmative choice to do so, the user is then required to update their Sonos App in order to be able to use their Sonos device. If a user has multiple Sonos devices and the firmware on just one of them is updated, the user will be forced to download the updated App Redesign in order to be able to use the Sonos App and control the system (and all Sonos devices therein) that includes the device with the upgraded firmware.[20]

55.     Therefore, Sonos compelled users to download the App Redesign, while misrepresenting and failing to disclose that it would remove core features and impair device performance. When Plaintiffs and Class members purchased their Sonos devices, they reasonably expected the Sonos App to remain functional and support key features over the life of the product.

**E.     Sonos Fails to Contain Fallout From the App Redesign**

56.     The App Redesign was met with immediate backlash. In June 2024, the Sonos App held an average of 1.3-star ratings on Google Play.[21] Sonos users complained about "missing features like sleep timers, broken local music library management, and no longer having the ability to edit playlists or the upcoming song queue."[22] Accessibility has also "taken a hit."[23] Subreddits discussing Sonos products were "flooded with

---

[20] nik9669a, *Response to Sonos forcing update*, Sonos Community (July 18, 2024), https://en.community.sonos.com/controllers-and-music-services-229131/sonos-forcing-update-6899837.

[21] Chris Welch, *Sonos Considers Relaunching its Old App*, THE VERGE, (Aug. 14, 2024, https://www.theverge.com/2024/8/14/24220421/sonos-s2-app-relaunch.

[22] Chris Welch, *Sonos Says its Controversial App Redesign Took 'Courage,'* THE VERGE (May 9, 2024), https://www.theverge.com/2024/5/9/24152675/sonos-new-app-bad-reviews-response-statement.

[23] *Id.*

CLASS ACTION COMPLAINT

complaints,"[24] while Spense's email inbox was flooded with over 30,000 customer complaints,[25] reflecting the widespread dissatisfaction with the App Redesign.

57.     According to *The Verge*, Sonos leadership considered bringing back the prior S2 app, which illustrates an acknowledgement of the redesign's failure.[26]

58.     Internally, the app's rollout has destabilized leadership and the Sonos workforce, as "Sonos laid off around 100 employees as the fallout from its rushed app makeover continues."[27] Sonos also announced the immediate departure of chief marketing officer Jordan Saxemard, who joined the company just before the App Redesign.[28] *The Verge* reported that "[h]e also had the unfortunate luck of immediately facing a challenging ordeal when Sonos prematurely rolled out an overhauled mobile app that was buggy and missing features."[29]

59.     Compounding the issue, CEO Patrick Spence acknowledged during an earnings call that the company's rollout had failed. "While the redesign of the app was and remains the right thing to do," Spence said, "our execution — my execution — fell short of the mark."[30] He further admitted that the controversy surrounding the app had

---

[24] *Id.*

[25] Carrie Marshall, *Screaming, Yelling, and 30,000 Complaint Emails: A Report Lays Bare What Went Wrong at Sonos*, TECHRADAR (Sept. 24, 2024), https://www.techradar.com/audio/screaming-yelling-and-30000-complaint-emails-a-report-lays-bare-what-went-wrong-at-sonos

[26] *Id.*

[27] *Id.*

[28] Chris Welch, Sonos' *Chief Marketing Officer Has Left the Company*, THE VERGE, (Feb. 10, 2025), https://www.theverge.com/news/609519/sonos-cmo-jordan-saxemard-leaving

[29] *Id.*

[30] *Id.*

CLASS ACTION COMPLAINT

become a "headwind" for existing product sales and overshadowed the launch of Sonos's long-awaited Ace headphones.[31]

60.    Nevertheless, despite the harm Plaintiffs and Class members face due to the degradation of their devices, restoring the prior S2 app presents technical challenges.[32] The reason for this is because the App Redesign shifted functionality to the cloud, which may complicate efforts to reintroduce earlier versions of the app on modern infrastructure.

**F.    The App Redesign Degraded the Performance of Sonos Devices**

61.    Since the release of the May 7, 2024 App Redesign, "customers have complained about missing features like sleep timers, broken local music library management, and no longer having the ability to edit playlists or the upcoming song queue."[33] The App Redesign substantially degraded the performance of Sonos devices in comparison to the prior versions of the Sonos App that were available for the devices.

62.    Nearly immediately after Sonos released the App Redesign, a large number of customers began complaining about degraded performance, missing features, audio playback falling out of sync across multiple speakers, devices failing to reliably connect, and the Sonos App's failure to connect to streaming services. On May 8, 2024—the day after the release—*The Verge*, a widely read online tech industry publication, reported that "the company took a scalpel to things and left a ton of stuff out."[34] As *The Verge* reported, these problems included:

---

[31] *Id.*

[32] *Id.*

[33] *Sonos Says its Controversial App Redesign Took 'Courage,' supra.*

[34] Chris Welch, *The New Sonos App is Missing a Lot of Features, And People Aren't Happy*, THE VERGE (May 8, 2024),
https://www.theverge.com/2024/5/8/24151704/sonos-new-app-bad-reviews-missing-features.

CLASS ACTION COMPLAINT

- "Features related to local music libraries are a mess — especially search."

- "The app's accessibility has regressed," referring to accessibility features for users whose vision is impaired.

- "Sleep timer functionality is totally gone."

- "Something as simple as editing the upcoming queue from inside the app? Even that's not available at the moment."

63. There was no way to roll back the App Redesign to a prior version of the Sonos App on both iOS and Android devices. Sonos also discouraged users from even trying to revert to a prior version of the Sonos App, with Tucker Severson, Director of Product Management, advising users that "[r]olling back to the previous version of the Sonos app is likely to cause issues"[35] because the Sonos app developers "ha[ve] gone too far adjusting other software elements to ever go back."[36] Spence admits that there are problems, not with just the app, but also "software that runs on your speakers and in the cloud too."[37]

64. In another article published the next day (May 9, 2024), *The Verge* reported that Sonos had provided the following statement:

> Redesigning the Sonos app is an ambitious undertaking that represents just how seriously we are committed to invention and re-invention," said chief product officer Maxime Bouvat-Merlin. "It

---

[35] Chris Welch, *Sonos Customers Complain About Missing Features in Redesigned App in Community AMA*, THE VERGE (May 14, 2024), https://www.theverge.com/2024/5/14/24156703/sonos-app-redesign-new-ama-complaints.

[36] Malcolm Owens, *Sonos CEO Insists iOS App Cannot Be Rolled Back to The Older, Better One*, APPLE INSIDER, (Aug. 21, 2024), https://appleinsider.com/articles/24/08/21/sonos-ceo-insists-ios-app-cannot-be-rolled-back-to-the-older-better-one.

[37] *Id.*

CLASS ACTION COMPLAINT

takes courage to rebuild a brand's core product to ultimately leap into the future."[38]

65.     On May 14, 2024, in response to the flood of user complaints, Sonos held an "Ask Me Anything" ("AMA") event on the Community forums section of its website. The event, which lasted three hours, featured a panel of three Sonos employees: Diane Roberts, Senior Director of Software Development; Kate Wojogbe, Senior Director of User Experience; and Tucker Severson, Director of Product Management. During the event, users made over seven-hundred posts, with questions regarding and criticisms of the App Redesign. In addition, Sonos staff reported receiving numerous direct messages from users.

66.     The questions posed, and answers given, during the AMA event included:[39]

Question: *Will My Library be added back to Global search?*

Answer (KW): Yes! We will be adding your local music library to search in the coming weeks.

Question: *I almost always use my Sonos devices in groups, and with the new app, handling of group volumes is worse. Not only does it not change in real-time like the former app, you end up with a UI pop-up on top of the volume slider I am using to adjust the volume. See the video below of before and after. Will this be fixed in a future app update?*

Answer (KW): I recognize that we have a ways to go to improve this tablet layout. Full stop. We will be continuing to improve this display and other UI improvements for tablets. No exact timing yet to share here, but the team shares your desire to make this and other layout improvements.

---

[38] *Sonos Says its Controversial App Redesign Took 'Courage,' supra.*

[39] *See New Sonos App - Community AMA Recap*, Sonos Community (May 14, 2024) https://en.community.sonos.com/events-at-sonos-229141/new-sonos-app-community-ama-recap-6893728. (The Sonos staff member that gave the answered is indicated by initials: DR for Diane Roberts, KW for Kate Wojogbe, and TS for Tucker Severson.)

CLASS ACTION COMPLAINT

Question: *When the app was getting ready to be released, what were your personal feelings regarding the new app? Did you anticipate that it would be so poorly received?*

Answer (KW): I've personally been excited to bring the experience to our users, but also understand that anytime you are making a change to an interface that someone uses, you're going to be met with a breadth of reactions, and understandably some negative ones, simply due to the nature of change. We knew that some customers would be understandably upset by the delay in certain features, but are eager to continue to roll out updates to ensure these features are in place, and to address the feedback we are getting from our users. I'm thankful to have an app that is easier for the team to work with and publish updates to with far greater frequency than we've had in the past.

Question: *Setting aside all the "why did you do this release like this", can you tell us how you will ensure it wont happen in the future, and what the plan is to address customer input in a more coherent way?*

Answer (TS): Our goal is to build the best products for you—to add sound to your lives. Along the way we may make mistakes. What we learned this past week is that we should have communicated more openly with you about changes that may impact you.

Question: *Sonos now claims that some of the most serious defects will be corrected in the 21 May release, but hopefully the panel can understand that there are a lot of blind people who can't trust Sonos anymore. Given that Sonos got it so horribly wrong with this current release, why should we expect anything better in the next? Will Sonos offer an apology to its blind users and accept that it got this wrong, and will Sonos commit to creating a Chief Accessibility Officer as a tangible commitment to ensuring this never happens again?*

Answer (DR): Thank you for your heartfelt feedback. We invested our user experience and engineering energy on supporting VoiceOver throughout this project. Unfortunately near the end, we took our eye off the ball and missed a couple of key bugs. Those bug fixes have been shipped in a release today.

Question: *I noticed that the re-introduction of alarms actually required an update to Sonos devices as well as the app today. Does this mean that the new UI revamp was in fact much more than just a revamp to the UI? Are there currently bigger changes happening on the device side as well?*

CLASS ACTION COMPLAINT

Answer (DR): The app is definitely a revamp, but it's not just the UI that changed! This new app is using new features on the speaker firmware and new cloud services as well. Let me share a bit more about what happened with alarm settings. *On the morning of the app launch, we discovered a data corruption error* around the new Alarms APIs. The corruption could cause alarms to go off in the wrong room at the wrong volume with the wrong content! In order to save your alarms, *we made the difficult decision to remotely disable the alarm settings feature and then completely lock it out*. It allowed us to make sure your alarms stayed as they were - but at the steep cost of taking away your ability to change them yourself. The team rallied to make sure we could turn this feature back on safely - and today we are so delighted to say that we have re-enabled alarm settings. To get this feature, you must do a full system update.

Question: *Do you factor in this loss of trust? Has this been costed? Was there a risk benefit analysis of releasing the app in such an unready state? Or did the the [sic] response to this app come as a surprise to you?*

Answer (DR): We did factor in a risk analysis about delaying some features along with the timing of the release. That risk-benefit analysis was carefully done across many decisions about what to prioritize. One thing I would like to restate from an earlier reply - we never intended to ship without Alarm Settings. [The answer then reiterated the response made above regarding the "data corruption error around the new Alarms APIs.]

67.    One user asked the fundamental question: "What was the thought process behind releasing the app update in an obviously unfinished state, instead of waiting for critical issues to be resolved?"

68.    In response, Mr. Severson stated:

An app is never finished!

It's probably a good idea to give you some background. This is a new app - we started from an empty project file. As the project progressed, we stopped investing our time in the old app code. Over time we "cross-faded" our engineering attention into the new app. We need to make the new app be the app going forward so we stop splitting our attention.

*We decided that now is the moment to bring you the new app.* This is the beginning, and we will be continually iterating going forward. As I said - an app is never finished.

25

CLASS ACTION COMPLAINT

69.    As The Verge observed, "that doesn't actually explain what was so pressing that the app needed to ship in early May — several weeks ahead of a rumored June release for the long-awaited Sonos Ace headphones, which will be reliant on the new app."[40]

70.    *The Verge* further reported that

*[T]his* situation has seriously shaken trust in the brand for those who regularly used now-missing features like local music search, sleep timers, and more. According to Sonos' recent estimates, some of those capabilities won't be coming back until June. It's perfectly fair to question why there was never an open beta for this reworked Sonos app or a transition phase between old and new to prevent customers from suddenly losing functionality. *The company's emails advertising the new app didn't mention any of these shortcomings.*[41]

71.    Those shortcomings included:

- Intermittent loss of connection between the App and Sonos devices and systems, stopping audio playback, and inability to re-establish connection, rendering the Devices and systems useless, or significant lag when attempting to establish connection between the App and Devices and systems.

- Intermittent disappearance of Sonos devices and systems from the Sonos App, stopping any audio playback and preventing user from using the Devices and systems, rendering the Devices and systems useless.

- Inability to "group" Sonos devices on a Sonos System so that the grouped devices play the same audio simultaneously.

- Inability to use the App Redesign to "shuffle" play in combined music library from multiple supported apps.

- Inability to use "play next" or "play last" buttons in the App.

---

[40] *Sonos Customers Complain About Missing Features in Redesigned App in Community AMA, supra*.

[41] *Id*.

- Inability to change volume, as the App does not respond to user commands to change volume, or does so only after significant delay, which prevents user from assessing the volume change as they attempt to make it.

- Overall "lag" in the App, meaning the App's response to user commands is significantly delayed.

- Frequent "crashing" of the App, interfering with audio playback and user's ability to use the App to control the Devices.

- Devices playing audio unexpectedly without user input.

- Inability to connect audio sources, such as Apple's iTunes, Apple Music, and iHeartRadio, to the App.

72.    In its announcements touting the App Redesign, and in its description of the App Redesign in the Apple App Store, Android app stores, and within the App itself, Sonos misrepresented the App Redesign as improving performance and did not disclose that the update would degrade the performance of Sonos devices.

73.    Sonos has been forced to repeatedly recognize that the App Redesign degraded the performance of Sonos devices. For instance, during an earnings call on August 7, 2024, CEO Spence admitted that "[w]ith the app, my push for speed backfired."[42] He continued: "As we rolled out the new software to more and more users, it became evident that there were stubborn bugs we had not discovered in our testing. As a result, far too many of our customers . . . are having an experience that is worse than what they previously had."[43]

74.    While Sonos assured users that it would quickly add missing features, this was delayed by the scope of the problem, as acknowledged by CEO Spence in a letter to users published on July 25, 2024:

---

[42] Chris Welch, *Sonos Delays Two New Products as It Races to Fix Buggy App*, THE VERGE (Aug. 7, 2024), https://www.theverge.com/2024/8/7/24215589/sonos-q3-2024-earnings-ace-headphone-buggy-app.

[43] *Id.*

CLASS ACTION COMPLAINT

We know that too many of you have experienced significant problems with our new app which rolled out on [May 7], and I want to begin by personally apologizing for disappointing you. There isn't an employee at Sonos who isn't pained by having let you down, and I assure you that fixing the app for all of our customers and partners has been and continues to be our number one priority.

We developed the new app to create a better experience, with the ability to drive more innovation in the future, and with the knowledge that it would get better over time. However, since launch we have found a number of issues. Fixing these issues has delayed our prior plan to quickly incorporate missing features and functionality.[44]

75.    The problems with the App Redesign were so substantial that Sonos considered re-releasing the S2 app for Android and iOS device. In an AMA event on Reddit on August 20, 2024, CEO Spence answered questions from users. During the event, Spence stated:

Everything has been on the table in terms of finding the fastest path to fixing your systems. In fact, *until very recently I'd been hopeful that we could re-release the old app (S2) as an alternative for those of you that are having issues that we've not yet resolved.*

*The trick of course is that Sonos is not just the mobile app, but software that runs on your speakers and in the cloud too.* In the months *since the new mobile app launched we've been updating the software that runs on our speakers and in the cloud to the point where today S2 is less reliable & less stable then what you remember. After doing extensive testing we've reluctantly concluded that re-releasing S2 would make the problems worse, not better.* I'm sure this is disappointing. It was disappointing to me.[45]

76.    Thus, users were stuck with the App Redesign.

---

[44] Patrick Spence, *Update on the Sonos App from Patrick*, SONOS (July 25, 2024), https://www.sonos.com/en-us/blog/update-on-the-sonos-app

[45] u/KeithFromSonos, *August Office Hours w/KeithFromSonos*, REDDIT, https://www.reddit.com/r/sonos/comments/1ew62yv/comment/lj3jwb8/ (last visited June 16, 2025)

CLASS ACTION COMPLAINT

77.     In an October 1, 2024 press release, Spence was quoted as stating that "[o]ur priority since its release has been - and continues to be - *fixing* the app. *There were missteps*, and we first went deep to understand how we got here, and then moved to convert those learnings into action."[46] Sonos told users that it would make certain "commitments which fall into two categories: addressing the root causes of the problems with the app release, and regaining the trust of our customers."[47] These included a commitment to "establish ambitious quality benchmarks at the outset of product development and [to] not launch products before meeting these criteria,"[48] implicitly conceding that Sonos did not have "ambitious quality benchmarks" before it released the App Redesign and that the App Redesign did not meet such standards.

78.     A *Wall Street Journal* article published in January 2025 called the App Redesign a $500 million "debacle," referring to the decline in Sonos's market capitalization in the wake of the App Redesign.[49]

79.     On January 13, 2025, Sonos announced that Spence was stepping down as CEO.[50] The very next day, Sonos announced that Chief Product Officer Maxime Bouvat-

---

[46] Scott Younker, *Sonos Outlines Turnaround Plan Following App Disaster – Here's What They're Saying*, TOM'S GUIDE (Oct. 1, 2024), https://www.tomsguide.com/audio/speakers/sonos-outlines-turnaround-plan-following-app-disaster-heres-what-theyre-saying.

[47] Latest News, *Sonos Announces New Quality and Customer Experience Commitments*, SONOS, (Oct. 1, 2024), https://investors.sonos.com/news-and-events/investor-news/latest-news/2024/Sonos-Announces-New-Quality-and-Customer-Experience-Commitments/default.aspx.

[48] *Id.*

[49] Ben Cohen, *The $500 Million Debacle at Sonos That Just Won't E*nd, WALL ST. J. (Jan. 17, 2025), https://www.wsj.com/tech/sonos-speakers-app-ceo-24250f2c.

[50] Denny Jacob, *Sonos Says CEO Patrick Spence is Stepping Down*, WALL ST. J. (Jan, 13, 2025) https://www.wsj.com/business/sonos-says-ceo-patrick-spence-is-stepping-down-fe0683fd?gaa_at=eafs&gaa_n=ASWzDAgSWvs0kFlX0FSjCbn50LE_EWQaT0JGIrcLeq1T9KLD3Mp88YGITIGeJSHFVt0%3D&gaa_ts=684cdcdb&gaa_sig=6-

29

Merlin would also leave the company.[51] The departure of Global Chief Marketing Officer, Jordan Saxemard, was announced on February 10, 2025.[52] Sonos also announced the resignation of its Chief Commercial Officer, Deirdre Findlay.[53]

80.    Sonos claimed in its October 1, 2024 press release that "[m]ore than 80% of the app's missing features have been reintroduced and the company expects to have almost 100% restored in the coming weeks."[54] However, Sonos did not keep this promise. A March 14, 2025 letter from Chief Innovation Officer Nick Millington stated that he and his team were "100% focused on two important priorities," including "closing gaps in the functionality and usability of the new app relative to what you enjoyed before, in a priority order that is as responsive as possible to the feedback we receive from you,"[55] making clear that those gaps persist. Even as of the date of this filing, the App Redesign has degraded functionality relative to prior versions of the Sonos App.

---

2yGvGnpzyty6CIRYskmwdvHk1QyVn2y4ZGLmqOdzUA62RIn6mpoP5XBuXW4VP 7-J4jxe-_B7tWPFBgCYYSKg%3D%3D.

[51] Scharon Harding, *After CEO Exit, Sonos Gets Rid of Its Chief Product Officer, Too*, ARS TECHNICA, (Jan 14, 2025), https://arstechnica.com/gadgets/2025/01/sonos-ousts-executive-blamed-for-rushing-botched-app-update/.

[52] Katie Deighton, *Sonos Marketing Chief Exits as Fallout From App Calamity Continues*, WALL ST. J. (Feb 10, 2025), https://www.wsj.com/articles/sonos-marketing-chief-exits-as-fallout-from-app-calamity-continues-422ff362?gaa_at=eafs&gaa_n=ASWzDAjbCSSUwQvwL0eiQ-BZZ8V09dRqobc-k_QhE1RQsHQkDdQ9HA3zh3OCgiiKcFQ%3D&gaa_ts=684cdd3f&gaa_sig=wB-30JNa0AV_BeLCXcpgpC0h0burUZY30_eTxwxo4AvJxDl44hiokhDp7ueUMeXDC5o ZQncqBMi0VZ8lbwqdog%3D%3D.

[53] Chris Welch, *Sonos Continues to Clean House with Departure of Chief Commercial Officer*, THE VERGE, (Jan. 15, 2025), https://www.theverge.com/2025/1/15/24344430/sonos-cco-deirdre-findlay-leaving.

[54] *Sonos Announces New Quality and Customer Experience Commitments*, *supra*.

[55] Wes Davis, *Sonos is Still Trying to Figure Out Why Everyone Hates Its App*, THE VERGE, (Mar. 15, 2025), https://www.theverge.com/news/630883/sonos-update-new-features-future-updates.

81.    Installation of the App Redesign on Sonos devices easily caused more than $5,000,000 in damages to the class within the first year of the release of the App Redesign. One of the principal selling points of Sonos devices is that multiple devices can be connected in a single system as many Sonos users have multiple Sonos devices. The number of Sonos users who downloaded the App Redesign within the first year of its release certainly exceeds one million and is likely many millions, and each of these users suffered, at minimum, $100 in damages.[56] Accordingly, within the first year of its release of the App Redesign, Sonos caused the putative Class well in excess of $5,000,000 in damages, and likely damages of at least hundreds of millions of dollars.

## V.    <u>PLAINTIFF EXPERIENCES</u>

### *Plaintiff Scott Blair*

82.    Plaintiff Scott Blair has been a Sonos customer since approximately 2020. Plaintiff owns eight Sonos devices, including six Sonos One speakers, a Roam speaker, and a Sonos Connect.

83.    Before installing the App Redesign, Plaintiff Blair used the Sonos app to control and operate his Sonos system. The app allowed Plaintiff Blair to install new speakers, create speaker groups for different rooms, integrate with Spotify, adjust sound settings, and control playback throughout the home.

84.    In or around the release of the App Redesign, Plaintiff Blair was forced to install the App Redesign.

85.    Almost immediately after installing the App Redesign, Plaintiff Blair began experiencing problems. Plaintiff Blair experienced unstable connections between synced speaker devices, difficulty reconnecting the devices, erratic audio playback, songs

---

[56] These figures follow from the fact that Sonos reported that, as of September 28, 2024, its devices were registered in approximately 16.3 million households globally, with each household averaging 3.1 Sonos Devices, and the majority of its revenue came from the United States. *See* ¶ 27, *supra*.

CLASS ACTION COMPLAINT

stopping mid-play, difficulty streaming from his local library and Spotify, or not playing through selected speakers.

86.    Plaintiff Blair made repeated efforts to troubleshoot the problems through the Sonos app, Sonos support website, and by following suggestions provided by other Sonos consumers on various online forums. These efforts included restarting devices, reinstalling the app, resetting the Sonos system, factory resetting the Sonos system, checking Wi-Fi connections, and updating device firmware. None of these steps resolved the issues caused by the App Redesign.

87.    The App Redesign diminished Plaintiff Blair's ability to use his Sonos system. Devices that had previously functioned without any issues became unreliable or unusable. Plaintiff Blair experienced daily frustration and was forced to alter long-established listening habits due to the app instability and missing features.

88.    If given a choice, Plaintiff Blair would not have installed the App Redesign. Plaintiff Blair was not given an option to revert to a prior version of the Sonos app and was effectively locked into using the flawed version of the Sonos app.

89.    As a result of Sonos's conduct, Plaintiff Blair lost the use and benefit of his Sonos products, suffered inconvenience and diminished value, and was deprived of the functionality that led him to initially purchase Sonos devices. Plaintiff Blair continues to experience ongoing issues related to the App Redesign.

90.    Plaintiff Blair installed each new update hoping for a fix, and while some updates temporarily restored functionality, the issues returned. Devices continued to disconnect, playback remained unstable, and the system was never reliably usable.

***Plaintiff Ryan Bolanowski***

91.    Plaintiff Ryan Bolanowski has been a Sonos customer since in or around 2023. Plaintiff owns seven Sonos products, including two Sonos Arc Sound Bars, two Sonos Subwoofers, a Sonos Play:5, a Sonos Roam 2, and a Sonos Move 2.

92.    Before installing the App Redesign, Plaintiff Bolanowski used the Sonos App to control and operate his Sonos system. The app allowed Plaintiff Bolanowski to

CLASS ACTION COMPLAINT

install new speakers, create speaker groups for different rooms, integrate with streaming services like Spotify and Apple Music, adjust sound settings, and control playback throughout the home.

93.    In or around May 2024, Plaintiff Bolanowski was forced to install the App Redesign.

94.    Almost immediately after installing the App Redesign, Plaintiff Bolanowski began experiencing problems. Plaintiff Bolanowski experienced unstable connections between synced speaker devices, difficulty reconnecting the devices, erratic audio playback, controlling volume, changing the songs, and grouping selected speakers.

95.    Plaintiff Bolanowski made repeated efforts to troubleshoot the problems through the Sonos App. These efforts included restarting devices, reinstalling the app, resetting the Sonos system, factory resetting the Sonos system, checking Wi-Fi connections, and updating device firmware. None of these steps resolved the issues caused by the App Redesign.

96.    The App Redesign diminished Plaintiff Bolanowski's ability to use his Sonos system. Devices that had previously functioned without any issues became unreliable or unusable. Plaintiff Bolanowski experienced daily frustration and was forced to alter long-established listening habits due to the app instability and missing features.

97.    If given a choice, Plaintiff Bolanowski would not have installed the App Redesign. Plaintiff Bolanowski was not given an option to revert to a prior version of the Sonos App and was effectively locked into using the flawed version of the Sonos App.

98.    As a result of Sonos's conduct, Plaintiff Bolanowski lost the use and benefit of his Sonos products, suffered inconvenience and diminished value, and was deprived of the functionality that led him to initially purchase Sonos devices. Plaintiff Bolanowski continues to experience ongoing issues related to the App Redesign.

99.    Plaintiff Bolanowski installed each new update hoping for a fix, and while some updates temporarily restored functionality, the issues returned. Devices continued to disconnect, playback remained unstable, and the system was never reliably usable.

33

CLASS ACTION COMPLAINT

***Plaintiff John Welch***

100.   Plaintiff John Welch has been a Sonos customer since approximately 2015. Plaintiff owns four Sonos devices, including a first-generation Sonos Sound Bar, a Sonos Subwoofer, a Sonos Era 100 speaker, and a Sonos Play:1.

101.   Before installing the App Redesign, Plaintiff Welch used the Sonos App to control and operate his Sonos system. The app allowed Plaintiff Welch to install new speakers, create speaker groups for different rooms, integrate with streaming services like Spotify and Apple Music, adjust sound settings, and control playback throughout the home.

102.   In or around May 2024, Plaintiff Welch was forced to install the App Redesign.

103.   Almost immediately after installing the App Redesign, Plaintiff Welch began experiencing problems. Plaintiff Welch experienced unstable connections between synced speaker devices, difficulty reconnecting the devices, difficulty in using the Sonos App as it is glitchy and slow to process input, difficulty streaming from libraries and various music streaming services, or not playing through selected speakers.

104.   Plaintiff Welch made repeated efforts to troubleshoot the problems through the Sonos App, Sonos customer service telephone line, and by following suggestions provided by other Sonos consumers on various online forums. These efforts included restarting devices, reinstalling the app, resetting the Sonos system, factory resetting the Sonos system, checking Wi-Fi connections, and updating device firmware. None of these steps resolved the issues caused by the App Redesign.

105.   Plaintiff Welch also paid out of pocket for and downloaded a third-party app, SonoPhone to be able to use his Sonos devices.

106.   The App Redesign diminished Plaintiff Welch's ability to use his Sonos system. Devices that had previously functioned without any issues became unreliable or unusable. Plaintiff Welch experienced daily frustration and was forced to alter long-established listening habits due to the app instability and missing features.

CLASS ACTION COMPLAINT

107.   If given a choice, Plaintiff Welch would not have installed the App Redesign. Plaintiff Welch was not given an option to revert to a prior version of the Sonos App and was effectively locked into using the flawed version of the Sonos App.

108.   As a result of Sonos's conduct, Plaintiff Welch lost the use and benefit of his Sonos products, suffered inconvenience and diminished value, and was deprived of the functionality that led him to initially purchase Sonos devices. Plaintiff Welch continues to experience ongoing issues related to the App Redesign.

109.   Plaintiff Welch installed each new update hoping for a fix, and while some updates temporarily restored functionality, the issues returned. Devices continued to disconnect, playback remained unstable, and the system was never reliably usable.

## VI.   CLASS ACTION ALLEGATIONS

110.   Plaintiffs bring this action individually, and on behalf of all members of the following Classes (together, the "Class" or "Classes") of similarly situated persons:

### Nationwide Class

All purchasers, owners, users, or lessees of any Sonos Device in the United States whose Sonos App was running any version of the App Redesign.

### Illinois Subclass

All purchasers, owners, users, or lessees of any Sonos Device in Illinois whose Sonos App was running any version of the App Redesign.

### New Jersey Subclass

All purchasers, owners, users, or lessees of any Sonos Device in New Jersey whose Sonos App was running any version of the App Redesign.

### New York Subclass

All purchasers, owners, users, or lessees of any Sonos Device in New York whose Sonos App was running any version of the App Redesign.

35

CLASS ACTION COMPLAINT

111.    Excluded from the Class are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

112.    Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes, before the Court determines whether certification is appropriate.

113.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

114.    <u>Numerosity</u>. The Class members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class members are unknown at this time, based on information and belief, the Class consists of hundreds of thousands or millions of Class members, making joinder impracticable. Those individuals' identities are available through Sonos' records, and Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

115.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

      a.  Whether the App Redesign diminished the performance of the Sonos devices;

      b.  Whether Sonos knew that the App Redesign would diminish the performance of the Sonos devices;

      c.  Whether the App Redesign removed or disabled features previously available to Sonos users;

CLASS ACTION COMPLAINT

d.  Whether Sonos users reasonably expected continued access to the functions and features present at the time of purchase;

e.  Whether the App Redesign diminished the value or utility of Sonos devices for Plaintiffs and Class members;

f.  Whether Sonos's conduct caused economic loss, loss of use, or other injury to Plaintiffs and Class members;

g.  Whether Sonos engaged in unfair, deceptive, or unlawful business practices by releasing the App Redesign with known defects and withholding material information from consumers;

h.  Whether Sonos had a duty to disclose known material defects or omissions related to the App Redesign.

i.  Whether Sonos misrepresented or omitted the effect of the App Redesign of the Sonos devices;

j.  Whether Sonos's uniform conduct violated each of the causes of action set forth below, including (1) Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et seq*.; (2) California Computer Access and Fraud Act, Cal. Penal Code §§ 502, *et seq*.; (3) False and Misleading Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*.; (4) trespass to chattels; (5) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200; (6) breach of contract; (7) breach of the duty of good faith and fair dealing; (8) negligent misrepresentation; (9) Illinois' Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. §§ 510 & 512; (10) Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. §§ 505, *et seq*. (11) New Jersey Consumer Fraud Act, N.J. Stat. Ann §§ 56:8-1, *et seq*. (12) New York General Business Law, N.Y. Gen. Bus. Law § 349; and (13) New York General Business Law, N.Y. Gen. Bus. Law § 351.

CLASS ACTION COMPLAINT

k.  Whether compensatory, trebled, consequential, or statutory damages, restitution, or attorneys' fees should be awarded to Plaintiffs and the other Class members, where permissible by statute; and

l.  Whether injunctive and/or other equitable relief is appropriate, and what that relief should be.

116.  Sonos engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

117.  <u>Typicality</u>. Plaintiffs' claims are typical of those of other Class members because Plaintiffs' use and enjoyment of their Sonos devices was disrupted, like that of every other Class Member, as a result of Sonos's App Redesign. Plaintiffs' claims are typical of those of the other Class members because, *inter alia*, all Class members were injured through the common misconduct of Sonos. Plaintiffs are advancing the same claims and legal theories on behalf of Plaintiffs and all other Class members, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and those of Class members arise from the same operative facts and are based on the same legal theories.

118.  <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately represent and protect the interests of Class members. Plaintiffs' counsel are competent and experienced in litigating class actions related to consumer protections.

119.  <u>Predominance</u>. Sonos has engaged in a common course of conduct toward Plaintiffs and Class members in that it released a defective App Redesign that impaired the functionality of Sonos devices, failed to disclose known defects, and removed essential features. The common issues arising from Sonos' conduct affecting Class members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

CLASS ACTION COMPLAINT

120.    <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Sonos. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

121.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). Sonos has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

122.    Finally, all members of the proposed Class are readily ascertainable. Sonos has access to the names and addresses and/or email addresses of Class members affected by the App Redesign since Sonos requires a user to create an account in order to use the Sonos App.

## VII.    <u>CAUSES OF ACTION</u>

123.    Plaintiffs bring the following causes of action. In addition to Sonos's violation of federal law described in Count I, Counts II through V brought under California law apply to the entire Class because Sonos's conduct, as described herein, originated from California, the Sonos devices and App Redesign were designed and originated in California, and Sonos published a Terms of Use, License, and Warranty Agreement for U.S. users ("Terms of Use") providing that California law shall apply. In the alternative, Count VI is brought by Plaintiff Bolanowski on behalf of the Illinois

CLASS ACTION COMPLAINT

Subclass; Count VII is brought by Plaintiff Welch on behalf of the New Jersey Subclass; and Count VIII and IX is brough by Plaintiff Blair on behalf of the New York Subclass.

## <u>COUNT I</u>

### VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT
### 18 U.S.C. §§ 1030, ET SEQ.

124.    Plaintiffs reallege and incorporate by reference each of the above paragraphs as if fully set forth herein.

125.    The Computer Fraud and Abuse Act enacted as part of the Electronic Communications Privacy Act of 1986, prohibits the intentional accessing, without authorization or in excess of authorization, of a computer under certain circumstances. 18 U.S.C. § 1030(a).

126.    Sonos forcefully caused Plaintiffs and Class members to download and install the App Redesign without informing them that the App Redesign would diminish the performance of their Sonos devices. Accordingly, Plaintiffs and Class members did not give knowing or voluntary permission for Sonos to damage, disrupt, and/or impair their Sonos devices via the App Redesign—nor could they—as Sonos omitted material information to Plaintiffs and Class members regarding the App Redesign. Any purported consent, such as through an automatic update, was uninformed, as Sonos failed to disclose material information about known defects and loss of functionality—rather, Sonos even touted the new app's capacity as "Your key to the ultimate listening experience…The Sonos app brings all your content and settings together in one place for effortless control."[57]

127.    The Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A) specifically provides that it is unlawful to "knowingly cause[] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally cause[] damage without authorization, to a protected computer."

---

[57] *Your Key to the Ultimate Listening Experience*, Sonos, (May 9, 2024), *supra*.

CLASS ACTION COMPLAINT

128. A "computer" is defined as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." 18 U.S.C. § 1030(e)(10). This includes Plaintiffs' and Class members' iOS and Android devices on which Defendant forced Plaintiffs and Class members to install the App Redesign.

129. Plaintiffs' and Class members' Sonos devices, and the iOS and Android devices on which they installed the App Redesign, are "protected computers" as defined in 18 U.S.C. § 1030(e)(2)(B) because they are used in interstate commerce and/or are communication devices.

130. Sonos violated 18 U.S.C. § 1030(a)(5)(A) because it knowingly caused the transmission of a program, information, code, or command by sending the App Redesign update, and, as a result of Sonos's knowing transmission, Sonos intentionally caused damages without authorization to Plaintiffs' Sonos devices. Sonos programmers wrote, controlled, and tested every aspect of the App Redesign. Sonos tested the App Redesign prior to releasing it to the public, and Sonos knew that the App Redesign would significantly degrade the performance of Sonos devices. As alleged above, Plaintiffs and Class members did not know that the App Redesign would damage their Sonos devices and, therefore, did not authorize such damage.

131. Plaintiffs and Class members have suffered economic losses as a result of Sonos's conduct. These losses include, but are not limited to, diminished value of Sonos devices, loss of use, and time spent troubleshooting that could have been utilized for work or recreation.

132. Plaintiffs and Class members have additionally suffered loss of use due to the impaired use of their Sonos devices. Immediately after installing the App Redesign, Plaintiffs' and Class members' ability to control their Sonos devices became slower and they lost many preexisting features of the Sonos App, while also experiencing persistent

---

41

CLASS ACTION COMPLAINT

connection failures and unstable playback. Plaintiffs and Class members should be compensated for such reduction in function.

133. Unless restrained and enjoined, Sonos will continue to engage in this conduct. As alleged above, Sonos App updates contain important features and, for that reason, Sonos users must be protected from future damage to their devices by impending updates they may wish to implement to benefit from these features. Money damages alone are inadequate, entitling Plaintiffs to remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

134. Plaintiffs and Class members suffered damages as a result of Sonos's actions. Plaintiffs seek all remedies available as a result of Sonos's violation of the Consumer Fraud and Abuse Act.

## COUNT II

### VIOLATIONS OF THE CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT CAL. PENAL CODE §§ 502, ET SEQ.

135. Plaintiffs reallege and incorporate by reference each of the above paragraphs as if fully set forth herein.

136. In pushing the App Redesign to unsuspecting users of Sonos devices, Sonos violated the California Penal Code, Computer Data Access and Fraud Act, Cal. Penal Code §§ 502, et seq. ("CDAFA").

137. Sonos specifically violated Cal. Penal Code § 502 (c)(4) and (c)(5).

138. As to Cal. Penal Code § 502(c)(4), Sonos knowingly accessed a computer system (the devices on which the App Redesign was installed) by providing and installing the App Redesign, which degraded the performance of each user's Sonos App and devices. Sonos did not inform Plaintiffs or Class members that installation of the App Redesign would degrade the performance of their Sonos App and devices, and, therefore, Plaintiffs and other Class members did not consent to the damages.

139. As to Cal. Penal Code § 502(c)(5), Sonos knowingly and without consent disrupted computer services by installing software updates (the App Redesign) to the

devices on which the App Redesign was installed, which, as alleged above, degraded the performance of the Sonos App and devices. "Computer services" is defined by Cal. Penal Code § 502(b)(4) as "computer time, data processing, or storage functions, Internet services, electronic mail services, electronic message services, or other uses of a computer, computer system, or computer network." The Sonos devices and the devices (such as smartphones) on which the App Redesign was installed are and/or provide computer services within the meaning of the statute.

140.   Because Class members did not know that the updates would degrade the performance of their devices, they did not give Sonos permission to access, damage, and/or disrupt their Sonos App and devices.

141.   Plaintiffs and Class members suffered damages as a result of Sonos's actions. Plaintiffs seek all remedies available as a result of Sonos's unlawful conduct.

## <u>COUNT III</u>

### VIOLATIONS OF CALIFORNIA'S FALSE AND MISLEADING ADVERTISING LAW CAL. BUS. & PROF. CODE §§ 17500 ET SEQ.

142.   Plaintiffs reallege and incorporate by reference each of the above paragraphs as if fully set forth herein.

143.   Sonos's acts and practices, as described herein, have deceived and/or are likely to continue to deceive Class members and the public. Sonos mispresented the performance of the App Redesign, concealed the performance degradation of the Sonos devices caused by the App Redesign, and misrepresented the purpose of the App Redesign.

144.   Defendant's advertising was misleading in a material respect because it falsely implied that its goods and services would remain fully functional and supported through the Sonos App. Sonos failed to disclose material facts regarding the impact of its software changes. Specifically, Sonos failed to disclose that the update would remove or degrade core functionality of Sonos devices and leave consumers without a means to revert to the prior app version.

CLASS ACTION COMPLAINT

145.   By its actions, Sonos disseminated uniform advertising regarding the App Redesign based out of California and governed by California law. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code §§ 17500, et seq. Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

146.   The above-described false, misleading, and deceptive advertising Sonos disseminated continues to have a likelihood to deceive in that Sonos failed to disclose the true nature of the App Redesign and its impact on Sonos devices, continuing to deceive consumers.

147.   Sonos misrepresented to consumers that the App Redesign improved or maintained the performance of the Sonos devices even though it actually degraded the performance of the devices. Had Sonos disclosed those issues, rather than falsely advertising the App Redesign, consumers would not have downloaded the App Redesign onto their devices. In addition, had Sonos disclosed the way in which the App Redesign would affect the performance of their Sonos devices, consumers would not have purchased their Sonos devices for the price that Sonos charged.

148.   In making and disseminating the statements alleged herein, Sonos knew, or should have known, its advertisements were untrue and misleading in violation of California law. Plaintiffs and other Class members based their decisions to download the App Redesign on Sonos's material misrepresentations and omitted material facts. Plaintiffs and Class members were injured in fact and lost money and property as a result.

149.   The misrepresentations and non-disclosures by Sonos of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute violations of Cal. Bus. & Prof. Code §§ 17500, et seq.

150.   As a result of Sonos's wrongful conduct, Plaintiffs and Class members have suffered economic injury and other harm.

151.   Monetary damages and other legal remedies are inadequate to address Sonos's wrongful practices described in this complaint. Among other reasons, such

remedies would not end Sonos's wrongful practices. Plaintiffs are entitled to injunctive relief to address Sonos's wrongful conduct. Plaintiffs further seek any additional equitable relief to which they may be entitled.

<u>**COUNT IV**</u>

**TRESPASS TO CHATTELS**

152.  Plaintiffs reallege and incorporate by reference each of the above paragraphs as if fully set forth herein.

153.  Common law prohibits the intentional intermeddling with personal property in the possession of another, without consent, that results in either a) the deprivation of the use of that personal property; or b) the impairment of the condition, quality, or usefulness of the property.

154.  Sonos impaired the condition, quality, and usefulness of Plaintiffs' and Class members' Sonos App and Devices, or parts of them, without their knowledge or consent. Such acts constitute an intentional interference with their use and enjoyment of the Sonos devices.

155.  Sonos acted intentionally, because it knew that Plaintiffs and Class members were downloading software onto their mobile devices and firmware onto their Sonos devices that reduced the performance of the devices. Plaintiffs and other Class members were forced to update and believed the app updates would improve or maintain performance, not diminish performance.

156.  Sonos engaged in deception to gain access to Sonos user devices on which the firmware was installed and to install new computer software in the form of the App Redesign.

157.  Plaintiffs and Class members suffered damages as a result of Sonos's actions.  Plaintiffs seek all remedies available as a result of Sonos's trespass.

CLASS ACTION COMPLAINT

## COUNT V

### VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL") CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.

158.    Plaintiffs reallege and incorporate by reference each of the above paragraphs as if fully set forth herein.

159.    Sonos is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

160.    The California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, et seq. ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law. Sonos violated the UCL by engaging in unlawful, unfair, and deceptive business acts and practices.

161.    The acts, omissions, and conduct complained of herein in violation of the UCL were designed and emanated from Defendant's California corporate office.

162.    The acts, omissions, and conduct of Defendant as alleged herein constitute a "business practice" within the meaning of the UCL.

**Unlawful Prong**

163.    Sonos has engaged in "unlawful" business practices by violating multiple laws, including the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, et seq.; California Computer Access and Fraud Act, Cal. Penal Code §§ 502, et seq.; False and Misleading Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq.; trespass to chattels; breach of contract; breach of the duty of good faith and fair dealing; negligent misrepresentation; Illinois' Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. §§ 510 & 512; Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. §§ 505, *et seq.*; New Jersey Consumer Fraud Act, N.J. Stat. Ann §§ 56:8-1, *et seq.*; New York General Business Law, N.Y. Gen. Bus. Law § 349; and New York General Business Law, N.Y. Gen. Bus. Law § 351.

**Fraudulent Prong**

164.  Sonos violated Cal. Bus. & Prof. Code § 17200's prohibition against "fraudulent" conduct by touting to consumers, including Plaintiffs, that the App Redesign would improve their devices without disclosing the critically important information that the App Redesign would degrade the performance of their devices. Sonos's representations and omissions were likely to mislead reasonable consumers and did mislead them. Plaintiffs and Class members relied on Sonos's misrepresentations and would not have downloaded the App Redesign if they knew that it would degrade the performance of their Sonos App and devices. As alleged above, among other economic damages, the Sonos devices are worth less now than before Sonos deceived them into installing the App Redesign.

**Unfair Prong**

165.  Sonos's conduct violates the "unfair" prong of the UCL. Sonos's conduct is substantially injurious to consumers like Plaintiffs and other Class members, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct— tricking and forcing Sonos users into downloading the App Redesign without disclosing the defects therein—outweighs any alleged benefit. Specifically, the utility gained by updating to or running the App Redesign was outweighed by the diminishment of the functionality of the Sonos devices. Sonos engaged in this conduct at the expense of its customers' rights when there are other reasonably available alternatives to further its legitimate business interests such as providing customers with full information about the App Redesign, not releasing it until it was fixed, releasing a separate app altogether, among other things.

166.  As a result of Defendant's violations of the UCL, Plaintiffs and Class members have suffered injury in fact and lost money or property, as detailed herein. Plaintiffs and Class members purchased Sonos devices and transacted with Defendant under the reasonable belief that those products would retain their core functionality, usability, and advertised features when used with the Sonos App. Had they known that

Sonos would alter, remove, or impair essential app functionality, force mandatory updates, or render devices unstable or degraded, they would not have purchased the products or would have paid less. Plaintiffs and Class members also expended time and money attempting to diagnose, repair, or troubleshoot impacted Sonos devices.

167.   Monetary damages and other legal remedies are inadequate to address Sonos's wrongful practices described in this complaint. Among other reasons, such remedies would not end Sonos's wrongful practices. Plaintiffs are entitled to injunctive relief to address Sonos's wrongful conduct. Plaintiffs further seek any additional equitable relief to which they may be entitled.

## COUNT VI

### BREACH OF CONTRACT

168.   Plaintiffs reallege and incorporate by reference each of the above paragraphs as if fully set forth herein.

169.   Sonos solicited and invited Plaintiffs and Class members to buy new Sonos devices. Plaintiffs and class members accepted Sonos's offers and bought Sonos devices from Sonos.

170.   Plaintiffs and Class members formed contracts with Sonos at the time they purchased their Sonos devices and updated their Sonos App. The terms of the contracts include promises and affirmations made by Sonos on its website and through marketing that the Devices and the Sonos App would perform as advertised, even after updating the App Redesign.

171.   Further, Plaintiffs and Class members entered into implied contracts with Sonos wherein Sonos agreed not to purposefully interfere with, degrade, negatively affect, or otherwise harm Plaintiffs' and Class members' Sonos devices or their usage of the Sonos devices, including through software and firmware updates.

172.   Updates to the Sonos App are governed by an agreement that provides that California law shall govern the agreement between Plaintiffs and Class members on one hand, and Sonos on the other.

CLASS ACTION COMPLAINT

173.   Plaintiffs reasonably relied upon representations that their Sonos devices and the Sonos App would perform as advertised and warranted, and Class members would be reasonable in relying upon those same representations.

174.   Plaintiffs and Class members performed their obligations under their contracts with Sonos.

175.   Sonos breached these contracts by releasing the App Redesign, which materially impaired the use and functionality of the Sonos App and devices, removed core features, and degraded system reliability without adequate disclosure and without providing users the ability to maintain the functionality that they originally paid and bargained for.

176.   As a result of Sonos's breach, Plaintiffs and Class members have been damaged in an amount equal to the purchase price of the Sonos devices.

177.   All conditions precedent to Sonos's liability under its contractual obligations, including notice, have been performed by Plaintiffs and the Class.

## COUNT VII

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

178.   Plaintiffs reallege and incorporate by reference each of the above paragraphs as if fully set forth herein.

179.   In every contract or agreement there is an implied promise of good faith and fair dealing under California law.

180.   As described herein, contracts with California choice of law provisions govern the agreements between Sonos and its customers.

181.   In dealings between Sonos and its customers, Sonos has power affecting the rights of its users because Sonos has unilateral control over the software and firmware required to operate its devices.

182.   Sonos entered into contracts with the Class members and Plaintiffs at the time they purchased their Sonos devices and updated their Sonos App .

CLASS ACTION COMPLAINT

183.   Sonos contractually promised in the App Redesign update and later updates that "[t]his update brings a new look and feel to the app. Get your favorite music faster. Enjoy easier control of your system. And personalize your experience."[58]

184.   Sonos did not disclose to customers that the update would result in the aforementioned performance issues, nor did it provide users with a way to opt out of the update or revert to a prior version of the Sonos App.

185.   Each Plaintiff did all, or substantially all, of the things that the contracts required them to do.

186.   The App Redesign degraded the performance and usability of Sonos App and devices, removing essential features and disrupting core functionality.

187.   Sonos did not inform customers that the App Redesign would reduce functionality, or that users would have no ability to opt out or revert to a prior version of the app. Sonos effectively forced Sonos users to update the App Redesign.

188.   Despite promising improvements and continued product reliability, Sonos knowingly released an update that degraded user experience and failed to disclose that the App Redesign would materially interfere with expected product performance.

189.   Sonos's actions were objectively unreasonable given Sonos's promises.

190.   Sonos's conduct evaded the spirit of the bargain made between Sonos and the Plaintiffs and Class members.

191.   As a result of Sonos's misconduct and breach of its duty of good faith and fair dealing, Plaintiffs and the Class members suffered damages. Plaintiffs and the Class members did not receive the benefit of the bargain for which they contracted and for which they paid valuable consideration.

/ / /

/ / /

/ / /

---

[58] *Your Key to the Ultimate Listening Experience*, SONOS, (June 9, 2024), *supra*.

CLASS ACTION COMPLAINT

# COUNT VIII

## NEGLIGENT MISREPRESENTATION

192.   Plaintiffs reallege and incorporate by reference each of the above paragraphs as if fully set forth herein.

193.   Sonos negligently and recklessly omitted certain material facts regarding the App Redesign and impact of the App Redesign on those Sonos devices. Sonos failed to warn consumers that the App Redesign contained material defects, including the removal of essential features, impairment of Sonos device functionality, and degradation of performance. Despite knowing from internal testing and employee feedback that the update would cause widespread usability issues, Sonos released the App Redesign without disclosing these consequences to Plaintiffs and the Class. Sonos, then, effectively failed to warn consumers that the App Redesign would actually degrade Sonos App and device performance, resulting in a loss of functionality and performance so that the Sonos App and devices did not perform as advertised or warranted.

194.   The advertisements and warranties, which were made expressly through uniform representations from Sonos that emanated from its corporate headquarters in California, were material and would have been considered by a reasonable consumer in making purchasing decisions.

195.   Plaintiffs and Class members acquired Sonos devices and downloaded the App Redesign believing that their Sonos devices would function as advertised.

196.   As a result, Plaintiffs and Class members were directly and proximately injured by Sonos's negligence in failing to inform Plaintiffs and Class members of the material defects in the App Redesign and that the App Redesign would cause device performance degradation.

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

## <u>COUNT IX</u>

**VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT, 815 Ill. Comp. Stat. §§ 510 & 512.**

**(On Behalf of Plaintiff Bolanowski and the Illinois Subclass)**

197.    Plaintiff Bolanowski (for the purposes of this count, the "Illinois Plaintiff"), individually and on behalf of the Illinois Subclass, repeats and realleges the preceding paragraphs as if fully alleged herein.

198.    Sonos is a "person" as defined by 815 ILCS §§ 510/1(5).

199.    Sonos engaged in deceptive trade practices in the conduct of its business, in violation of 815 ILCS §§ 510/2(a), including:

    a.    Representing that Sonos devices and the Sonos App had features and functionality they did not have;

    b.    Representing that the Sonos and Sonos devices were of a particular quality and will have continued reliability when, in fact, they were materially impacted by the App Redesign;

    c.    Advertising the App Redesign as an improvement, while knowing from internal feedback and testing that it removed key features and degraded performance of Sonos devices that consumers had previously purchased;

    d.    Engaging in conduct that creates a likelihood of confusion or misunderstanding among customers about the nature, reliability, and performance of the App Redesign and the Sonos devices the Sonos App controls.

200.    Defendant's omissions and misrepresentations were material because they were likely to deceive reasonable consumers into believing that the App Redesign would improve the performance and usability of their Sonos devices, maintain existing features, and provide a better overall experience.

201.    The above unfair and deceptive practices and acts by Sonos were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Illinois

CLASS ACTION COMPLAINT

Plaintiff and Illinois Subclass members that they could not reasonably avoid. This substantial injury outweighed any benefits to consumers or to competition.

202.   As a direct and proximate result of Defendant's deceptive and unlawful acts and practices, Illinois Plaintiff and Illinois Subclass members have suffered and will continue to suffer injury, but not limited to: loss of use of their Sonos devices; diminished functionality and performance; loss of features that were part of the original purchase value; time and effort spend attempting to resolve issues caused by the App Redesign; economic harm resulting from the reduced value and impaired usability of their Sonos products; and deprivation of the benefit of Illinois Plaintiff's and Illinois Subclass member's bargain in purchasing the Sonos devices.

203.   Plaintiff and Illinois Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

## COUNT X

### VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, Ill. Comp. Stat. §§ 505, et seq.

### (On Behalf of Plaintiff Bolanowski and the Illinois Subclass)

204.   The Illinois Plaintiff identified above, individually and on behalf of the Illinois Subclass, repeats and realleges the preceding paragraphs as if fully alleged herein.

205.   Illinois Plaintiff brings this claim on his own behalf and on behalf of each member of the Illinois Subclass described above.

206.   Defendant is a "person" as defined by 815 Ill. Comp. Stat. § 505/1(c).

207.   Illinois Plaintiff and Illinois Subclass members are "consumers" as defined by 815 Ill. Comp. Stat. § 505/1(e).

208.   Defendant's conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 Ill. Comp. Stat. § 505/1(f).

209.   Defendant's deceptive, unfair, and unlawful trade acts or practices, in violation of 815 Ill. Comp. Stat. § 505/2, include:

a.  Misrepresenting that the App Redesign would enhance the user experience and system performance while knowing that the update would degrade functionality, remove features, and cause persistent connectivity issues;

b.  Omitting, suppressing, and concealing the material fact that the App Redesign had known defects and performance problems that would impair the operation of Sonos devices;

c.  Failing to disclose that users would not be able to revert to a prior version of the app once the App Redesign was installed;

d.  Releasing the App Redesign despite internal testing and employee concerns that identified material risks to usability, functionality, and system stability;

e.  Promoting the App Redesign with statements such as "[b]etter by redesign" and "[y]our key to the ultimate listening experience," which were materially misleading in light of the app's known defects; and

f.  Forcing users to install the App Redesign through in-app prompts stating that "an app update is required" and that the current version would no longer control the system, while failing to disclose that the update would degrade performance, remove essential features, and destabilize device functionality.

210.  Defendant's omissions and misrepresentations were material because they were likely to deceive reasonable consumers into believing that the App Redesign would improve the performance and usability of their Sonos devices, maintain existing features, and provide a better overall experience.

211.  Defendant acted intentionally, knowingly, and maliciously to violate the Illinois Consumer Fraud Deceptive Business Practices Act, and recklessly disregarded Illinois Plaintiff's and Illinois Subclass members' rights, because Defendant released the App Redesign with knowledge from internal testing and employee feedback that it contained serious defects, removed essential features, and would significantly impair the operation of Sonos devices, while at the same time marketing it as an improvement and withholding material information from consumers. As such, Sonos's knowledge of the

App's and the Sonos devices' performance issues put Defendant on notice that the Sonos App and devices were not as it advertised.

212.    The fact that app updates may cause Sonos devices to not function correctly was material to Illinois Plaintiff and Illinois Subclass members. This is a fact that reasonable consumers would consider important when choosing to purchase, download or use an application, as well as in purchasing their Sonos devices, which requires the use of the Sonos App.

213.    Illinois Plaintiff and Illinois Subclass members were deceived and/or could reasonably be expected to be deceived by Defendant's misrepresentations and omissions regarding the functionality of the Sonos App, Sonos devices, and their continued reliability and functionality.

214.    Defendant intended to mislead Illinois Plaintiff and Illinois Subclass members and induce them to rely on their misrepresentations and omissions.

215.    In the course of its business, Defendant engaged in activities with a tendency or capacity to deceive.

216.    Illinois Plaintiff and the Illinois Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

217.    Defendant engaged in unfair and unconscionable conduct in violation of the Illinois Consumer Fraud Deceptive Business Practices Act by engaging in the conduct alleged herein, including by inducing Illinois Plaintiff and Illinois Subclass members to purchase and continue using Sonos devices and updating the Sonos App based on representations that the Sonos App would maintain or improve  the functionality of the Sonos devices, while knowing that the app would be modified in ways that removed key features, degraded usability, and impaired compatibility.

218.    Sonos also violated the Illinois Consumer Fraud Deceptive Business Practices Act by knowingly taking advantage of Illinois Plaintiff's and Illinois Subclass members' inability to reasonably protect their interests, due to their lack of knowledge

CLASS ACTION COMPLAINT

regarding Sonos's decision to push a mandatory software update that removed essential features, and impaired device functionality. These are all facts that Sonos was aware of and did not disclose.

219.   As a direct and proximate result of Defendant's deceptive and unlawful acts and practices, Illinois Plaintiff and Illinois Subclass members have suffered and will continue to suffer injury, but not limited to: loss of use of their Sonos devices; diminished functionality and performance; loss of features that were part of the original purchase value; time and effort spend attempting to resolve issues caused by the App Redesign; and economic harm resulting from the reduced value and impaired usability of their Sonos products; and deprivation of the benefit of Illinois Plaintiff's and Illinois Subclass members' bargain in purchasing the Sonos devices.

220.   Illinois Plaintiff and Illinois Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT XI

**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT, N.J. Stat. Ann §§ 56:8-1,** *et seq.*

**(On Behalf of Plaintiff Welch and the New Jersey Subclass)**

221.   Plaintiff Welch (for the purposes of this count, the "New Jersey Plaintiff"), individually and on behalf of the New Jersey Subclass, repeats and realleges all preceding paragraphs, as if fully alleged herein.

222.   New Jersey Plaintiff brings this claim on his own behalf and on behalf of each member of the New Jersey Subclass described above.

223.   Defendant is a "person(s)" as defined by N.J. Stat. Ann. § 56:8-1(d).

224.   Defendant sells "merchandise," as defined by N.J. Stat. Ann. § 56:8-1(c) and (e).

CLASS ACTION COMPLAINT

225.   The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, et seq., prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

226.   Defendant's unconscionable and deceptive practices include:

   a. Misrepresenting that the App Redesign would enhance the user experience and system performance while knowing that the update would degrade functionality, remove features, and cause persistent connectivity issues;

   b. Omitting, suppressing, and concealing the material fact that the App Redesign had known defects and performance problems that would impair the operation of Sonos devices;

   c. Failing to disclose that users would not be able to revert to a prior version of the app once the App Redesign was installed;

   d. Releasing the App Redesign despite internal testing and employee concerns that identified material risks to usability, functionality, and system stability;

   e. Promoting the App Redesign with statements such as "[b]etter by redesign" and "[y]our key to the ultimate listening experience," which were materially misleading in light of the app's known defects; and

   f. Forcing users to install the App Redesign through in-app prompts stating that "an app update is required" and that the current version would no longer control the system, while failing to disclose that the update would degrade performance, remove essential features, and destabilize device functionality.

227.   Defendant's omissions and misrepresentations were material because they were likely to deceive reasonable consumers into believing that the App Redesign would improve the performance and usability of their Sonos devices, maintain existing features, and provide a better overall experience.

CLASS ACTION COMPLAINT

228. Defendant intended to mislead New Jersey Plaintiff and New Jersey Subclass members and induce reliance on their misrepresentations and omissions.

229. Defendant acted intentionally, knowingly, and maliciously to violate the New Jersey Consumer Fraud Act, and recklessly disregarded New Jersey Plaintiff's and New Jersey Subclass members' rights, because Defendant released the App Redesign with knowledge from internal testing and employee feedback that it contained serious defects, removed essential features, and would significantly impair the operation of Sonos devices, while at the same time marketing it as an improvement and withholding material information from consumers. As such, Sonos's knowledge of the App and the Sonos device's performance issues put Defendant on notice that the Sonos Devices were not as it advertised.

230. The fact that app updates may cause Sonos devices to not function correctly, with stable connections was material to New Jersey Plaintiff and New Jersey Subclass members. This is a fact that reasonable consumers would consider important when choosing to purchase, download or use an application, as well as in purchasing their Sonos devices, which requires the use of the Sonos App.

231. New Jersey Plaintiff and New Jersey Subclass members were deceived and/or could reasonably be expected to be deceived by Defendant's material misrepresentations and omissions regarding the functionality of the Sonos App, the continued operability of their Sonos devices, and the impact of the forced app update on device performance and usability.

232. As a direct and proximate result of Defendant's unfair, unconscionable, and deceptive acts and practices, New Jersey Plaintiff and New Jersey Subclass members have suffered and will continue to suffer injury, but not limited to: loss of use of their Sonos devices; diminished functionality and performance; loss of features that were part of the original purchase value; time, money, and effort spend attempting to resolve issues caused by the App Redesign; and economic harm resulting from the reduced value and

impaired usability of their Sonos products; and deprivation of the benefit of New Jersey Plaintiff's and New Jersey Subclass members' bargain in purchasing the Sonos devices.

233.   New Jersey Plaintiff's and the New Jersey Subclass members' Sonos devices were rendered defunct. Accordingly, New Jersey Plaintiff and the New Jersey Subclass members are entitled damages they suffered as a result of Defendant's release of the App Redesign.

234.   New Jersey Plaintiff and New Jersey Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, restitution, treble damages under N.J. Stat. Ann. § 56:8-19, attorneys' fees, filing fees, and costs.

## COUNT XII

### VIOLATIONS OF THE NEW YORK GENERAL BUSINESS LAW, N.Y. Gen. Bus. Law § 349

### (On Behalf of Plaintiff Blair and the New York Subclass)

235.   Plaintiff Blair (for the purposes of this count, the "New York Plaintiff"), individually and on behalf of the New York Subclass, repeats and realleges all preceding paragraphs, as if fully alleged herein.

236.   New York Plaintiff brings this claim on his own behalf and on behalf of each member of the New York Subclass described above.

237.   N.Y. Gen. Bus. Law § 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

238.   Defendant engaged in deceptive acts or practices in the conduct of their business, trade, and commerce, in violation of N.Y. Gen. Bus. Law § 349. Defendant engaged in deceptive acts and practices by:

   a. Misrepresenting that the App Redesign would enhance the user experience and system performance while knowing that the update would degrade functionality, remove features, and cause persistent connectivity issues;

CLASS ACTION COMPLAINT

b. Omitting, suppressing, and concealing the material fact that the App Redesign had known defects and performance problems that would impair the operation of Sonos devices;

c. Failing to disclose that users would not be able to revert to a prior version of the app once the App Redesign was installed;

d. Releasing the App Redesign despite internal testing and employee concerns that identified material risks to usability, functionality, and system stability;

e. Promoting the App Redesign with misrepresentations such as "[b]etter by redesign" and "[y]our key to the ultimate listening experience," which were materially misleading in light of the app's known defects;

f. Forcing users to install the App Redesign through in-app prompts stating that "an app update is required" and that the current version would no longer control the system, while failing to disclose that the update would degrade performance, remove essential features, and destabilize device functionality.

239.   Defendant's omissions and misrepresentations were material because they were likely to deceive reasonable consumers into believing that the App Redesign would improve the performance and usability of their Sonos devices, maintain existing features, and provide a better overall experience.

240.   Defendant acted intentionally, knowingly, and maliciously to violate N.Y. Gen. Bus. Law § 349 or acted with reckless disregard for the rights of New York Plaintiff and New York Subclass members. As such, Sonos's knowledge of the App and the Sonos device's performance issues put Defendant on notice that the Sonos Devices were not as it advertised.

241.   The fact that app updates may cause Sonos devices to not function correctly, with stable connections was material to New York Plaintiff and New York Subclass members. This is a fact that reasonable consumers would consider important when choosing to purchase, download or use an application, as well as in purchasing their Sonos devices, which requires the use of the Sonos App.

242.   As a direct and proximate result of Defendant's deceptive and unlawful acts and practices, New York Plaintiff and New York Subclass members have suffered and will continue to suffer injury, but not limited to: loss of use of their Sonos devices; diminished functionality and performance; loss of features that were part of the original purchase value; time, money, and effort spend attempting to resolve issues caused by the App Redesign; and economic harm resulting from the reduced value and impaired usability of their Sonos products; and deprivation of the benefit of New York Plaintiff's and New York Subclass members' bargain in purchasing the Sonos devices.

243.   New York Plaintiff and New York Subclass members have suffered injuries in fact and ascertainable losses of money or property as a result of Defendant's deceptive acts and practices. These losses include the diminished value and impaired functionality of their Sonos devices, loss of use, and the time, money, and effort required to address ongoing technical issues caused by the App Redesign.

244.   The public interest and consumers at large were harmed by Defendant's deceptive and unlawful acts, which affected thousands of New York residents.

245.   The above deceptive and unlawful practices and acts by Sonos caused substantial injury to Plaintiffs and New York Subclass members that they could not reasonably avoid.

246.   New York Plaintiff and New York Subclass members seek all monetary and non-monetary relief available under N.Y. Gen. Bus. Law § 349, including actual damages or statutory damages of $50 (whichever is greater), treble damages, injunctive relief, attorneys' fees, and costs.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

## COUNT XIII

## VIOLATIONS OF THE NEW YORK GENERAL BUSINESS LAW, N.Y. Gen. Bus. Law § 350

### (On Behalf of Plaintiff Blair and the New York Subclass)

247.   Plaintiff Blair (for the purposes of this count, the "New York Plaintiff"), individually and on behalf of the New York Subclass, repeats and realleges all preceding paragraphs, as if fully alleged herein.

248.   New York Plaintiff brings this claim on his own behalf and on behalf of each member of the New York Subclass described above.

249.   Defendant engaged in advertising, including labeling, of goods and services that was misleading in a material respect in violation of New York General Business Law § 350-a(1).

250.   Defendant's advertising was misleading in a material respect because it falsely implied that its goods and services would remain fully functional and supported through the Sonos App. Sonos failed to disclose material facts regarding the impact of its software changes. Specifically, Sonos failed to disclose that the update would remove or degrade core functionality of Sonos devices, and leave consumers without a means to revert to the prior app version.

251.   The omission of these material facts rendered Defendant's representations misleading in light of the advertised nature of their goods and services. New York Plaintiff and New York Subclass members reasonably believed, based on Defendant's advertising, that Sonos would not force an app update that degraded the performance of the Sonos App and devices.

252.   Defendant knowingly and intentionally engaged in false advertising with the intent to induce New York Plaintiff and New York Subclass members to use its goods and services, relying on misleading representations and omissions regarding the continued functionality and support of Sonos devices. Sonos marketed its products as

CLASS ACTION COMPLAINT

reliable, and centrally managed through the Sonos App, while concealing that it would implement software changes that materially impaired functionality and removed key features.

253.   As a direct and proximate result of Defendant's deceptive and unlawful acts and practices, New York Plaintiff and New York Subclass members have suffered and will continue to suffer injury, but not limited to: loss of use of their Sonos devices; diminished functionality and performance; loss of features that were part of the original purchase value; time, money, and effort spend attempting to resolve issues caused by the App Redesign; and economic harm resulting from the reduced value and impaired usability of their Sonos products; and deprivation of the benefit of New York Plaintiff's and New York Subclass members' bargain in purchasing the Sonos devices.

254.   New York Plaintiff and New York Subclass members would not have purchased or downloaded Defendant's goods and services, or would have paid less for the Sonos devices, had the true facts been disclosed.

255.   New York Plaintiff seeks all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of five hundred dollars per violation, whichever is greater, treble damages for willful or knowing violations, injunctive relief, reasonable attorneys' fees, costs, pre-judgment interest, and any other relief the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all other Class members, seek the following relief:

A.    Certifying the class as requested herein, designating Plaintiffs as Class representatives, and appointing Plaintiffs' counsel as Class Counsel;

B.    Judgment in favor of Plaintiffs and Class members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs, as allowable by law;

CLASS ACTION COMPLAINT

C.      An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

D.      Ordering Sonos to pay both pre- and post-judgment interest on any amounts awarded, reasonable attorney's fees, costs, and expenses as allowable by law; and

E.      An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all issues so triable.

DATED: June 16, 2025                    Respectfully submitted,

*/s/ Tina Wolfson*
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Christopher E. Stiner (SBN 276033)
cstiner@ahdootwolfson.com
Sarper Unal (SBN 341739)
sunal@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*Attorneys for Plaintiffs and the Proposed Classes*

CLASS ACTION COMPLAINT